James X. Bormes (*pro hac vice* admission pending)
Catherine P. Sons (*pro hac vice* admission pending)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR
PLAINTIFF AND COLLECTIVE MEMBERS**

Thomas M. Ryan (*pro hac vice* admission pending)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois  60601
(312) 726-3400
tom@tomryanlaw.com
Attorney for Plaintiff

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JUAN SOLORZANO, individually and on behalf of all others similarly situated, | No.: |
| Plaintiff, | **COLLECTIVE ACTION COMPLAINT** |
| v. | |
| VOYA RETIREMENT INSURANCE and ANNUITY COMPANY, | **(JURY TRIAL REQUESTED)** |

Defendant.

Plaintiff, Juan Solorzano, individually and on behalf of all other persons similarly situated, known and unknown, through his attorneys, complains against Defendant Voya Retirement Insurance and Annuity Company ("Defendant"), as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), for Defendant's failure to pay Plaintiff and other similarly situated phone representatives all overtime pay for all time worked in excess of forty (40) hours per week.

2. Defendant is a financial and investment company offering financial products and services and health insurance products and services to millions of customers. Defendant is a wholly-owned subsidiary of Voya Financial, Inc., which has over $800 billion dollars in assets under management and administration.

3. During the three years preceding the filing of this Complaint, Defendant employed telephone-dedicated workers who handled customer service phone calls at call centers in Tempe and Chandler, Arizona and remotely from home.

4. Plaintiff and the telephone-dedicated employees handled phone calls with customers regarding matters such as loan requests, loan payments, financial plans, balance transfers and general account information.

5. Plaintiff and the telephone-dedicated employees worked in a fast-paced environment. They make approximately $40,000 annually for full-time work and have to be ready to handle dozens of calls per full-time shift.

6. From approximately January 2019 to August 2023, Plaintiff worked as a telephone-dedicated employee at Defendant's Tempe, Arizona call center (before the call center moved to Chandler, Arizona) and from his home.

7. Defendant required Plaintiff and similarly situated telephone-dedicated employees to be ready to handle a call at the start of their scheduled shift times.

8. In order to be ready to handle a call at the start of their scheduled shift time, Plaintiff and similarly situated telephone-dedicated employees had to first boot up their computers, open various software programs necessary for handling a call, read work email regarding services and information for the day's calls and log into the "dialer" from which they received the customer phone calls. Plaintiff and the putative collective did this work before the start of their scheduled shift time.

9. Under its policies and practices, Defendant regularly failed to pay these workers for their pre-shift work.

10. Additionally, under Defendant's policies and practices, Plaintiff and similarly situated telephone-dedicated employees had to be available to handle a call until the end of their scheduled shift time. As a result, they regularly worked past the end of their scheduled shift time when completing customer calls, logging out of the dialer and closing their software programs, securing confidential information and then reboot the computer. Furthermore, consistent with its policy, Defendant's timekeeping software was configured so that Plaintiff and similarly situated telephone-dedicated employees were not allowed to record time worked after the scheduled end of their shift if that time was less than somewhere close to approximately ten minutes.

11. Defendant knowingly required and/or permitted Plaintiff and other similarly situated telephone-dedicated employees to perform unpaid work before and after their scheduled shift times. This unpaid pre-shift work includes logging into Defendant's computers and network, initializing several software programs, and reading company issued emails and instructions at the beginning of their shifts. The unpaid post-shift work includes completing customer service calls, securing their workstations, and securing any customer or proprietary information at and after the end of their shifts.

12. The amount of uncompensated time Plaintiff and those similarly situated to him spend or have spent on these unpaid work activities averages approximately 15 minutes per day.

13. The requirement of telephone-dedicated workers logging into their

3

computers and opening up various software programs and applications before the start of their scheduled shift time is so common in the call center industry that the United States Department of Labor issued a fact sheet to the call center industry in June 2008 that reminded employers that the pre-shift work is compensable work and that the phone representatives must be paid starting from "the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." (*See* https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers).

14. The U.S. Department of Labor stated in the fact sheet: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails."  (See https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers).

15. Defendant's conduct in not paying the pre-shift and post-shift work described herein violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

16. Plaintiff brings his FLSA overtime claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of telephone-dedicated employees who worked for Defendant at the call centers operated by Defendant and remotely at home taking phone calls from the dialer.

**JURISDICTION AND VENUE**

17. This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 29 U.S.C. § 1331 and 29 U.S.C. § 216(b).

18. Venue is proper in this Court as the illegal conduct alleged herein occurred in this district.

**THE PARTIES**

19. Plaintiff Juan Solorzano is an individual who Defendant employed as an

4

hourly, non-exempt telephone-dedicated employee at the call center operated by Defendant located in Tempe, Arizona and at Defendant's home in Maricopa County, Arizona.

20. Plaintiff first began working at Defendant's Tempe, Arizona call center in January 2019. Defendant's Tempe, Arizona call center has since moved to Chandler, Arizona.

21. Plaintiff resides in and is domiciled within this judicial district.

22. Plaintiff is seeking recovery of overtime owed to him during the time he worked as a telephone-dedicated employee for Defendant. A copy of Plaintiff's consent form is attached hereto as Exhibit 1.

23. Defendant is a wholly-owned subsidiary of Voya Financial, Inc., a publicly traded entity. At all times mentioned herein, Defendant did business within Maricopa County, Arizona.

24. Defendant provides financial services and insurance products to customers in Maricopa County, Arizona and throughout Arizona and the United States.

25. During the last three years, Defendant has operated call centers for some period of time in Tempe and Chandler, Arizona. Additionally, during the last three years Defendant has employed telephone-dedicated employees who work remotely. Upon information and belief, Defendant employs telephone-dedicated workers at call centers located outside of Arizona.

26. Defendant's telephone-dedicated employees provide customer service related to Defendant's financial, retirement, investment and insurance company, regardless of whether they worked at Defendant's call center or remotely from home.

27. Defendant employed Plaintiff and other similarly situated phone representatives as "employees," as the term "employee" is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

28. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

29. Furthermore, Defendant has had, and continues to have, an annual gross business volume in excess of $500,000.

30. At all relevant times, Defendant was an "employer" of Plaintiff and other similarly situated phone representatives, as the term "employer" is defined by Section 203(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all material times, Plaintiff and the FLSA Collective Members, as defined in paragraph 81 below, were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

32. Further, at all material times, Defendant has operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendant performs related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

## FACTUAL ALLEGATIONS

*A.  Defendant's Practice of Requiring and/or Permitting Telephone-Based Employees to Work Before the Start of and After the End of Their Scheduled Shift Time*

33. Plaintiff regularly worked 40 hours or more during his tenure and employment with Defendant. Defendant paid Plaintiff an hourly rate of approximately $23.00 per hour.

34. Defendant required Plaintiff and similarly situated telephone-dedicated employees to be ready to handle a call at the start of their scheduled shift time.

35. Defendant's punctuality policy and practices required the telephone-dedicated employees to be logged into the phone system and available to accept calls at the

6

start of their scheduled shift times.

36. In order to be ready to handle a call, Plaintiff and similarly situated telephone-dedicated employees had to first be logged into Defendant's telephone systems and call queue.

37. In order to be logged into Defendant's telephone systems and call queue, Defendant required and/or permitted Plaintiff and similarly situated telephone-dedicated employees to arrive at their work station and/or computers prior to their scheduled shift time and boot up their computers, initialize several software programs, log into the email platform, read company emails and/or work instructions, and log into the telephone dialer from which the customers calls came, all prior to accepting a phone call from a customer via the dialer.

38. Defendant's policy and practice results in telephone-dedicated employees, including the Plaintiff, booting up their computers, opening and initializing several software programs and/or reading company emails and instructions prior to their start of their scheduled shift time.

39. Defendant's policy and practice disciplines telephone-dedicated employees if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

40. If a putative collective member is not ready to handle a call at the start of their scheduled shift time, they are subject to discipline up to and including termination.

41. Defendant did not instruct Plaintiff and similarly situated telephone-dedicated employees not to log into their computers or telephone, or not to read company emails, prior to the start of their scheduled shift time.

42. Rather, Defendant required, permitted and/or allowed Plaintiff and the putative collective members to work prior to and after their scheduled shift time.

43. At the end of their shift, Plaintiff and similarly situated phone-based

employees were expected to be available to handle a call until the end of their scheduled shift time. As a result, Plaintiff and similarly situated telephone-dedicated employees regularly worked past the end of their scheduled shift times while they performed the unpaid work of logging off their software programs and computers, securing their workstations and Defendant's customer and proprietary information, and rebooting their computers, pursuant to Defendant's policies and practices.

44.     Plaintiff and similarly situated telephone-dedicated employees had their pre- and/or post-shift work rounded away from their pay and were regularly not paid for some or all of their work activities prior to the beginning of their shifts or after the end of their shifts.

45.     Prior to being hired as a telephone-dedicated employee, Plaintiff and other similarly situated employees who worked at Defendant's call centers or remotely were and are interviewed by employees and managers of Defendant.

46.     Defendant had the power to hire and fire Plaintiff and other telephone-based employees. Defendant controlled and set the schedules for Plaintiff and similarly situated telephone-dedicated employees.

### B.     *Defendant Knew of and Assented to the Unpaid Work*

47.     Defendant monitored, directed and controlled the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

48.     Defendant's supervisors and team leads on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based employees arrived at their workstations before the start of their scheduled shift time, logged into Defendant's computers, and began working on their computers prior to the start of their scheduled shift time.

49.     Defendant's supervisors and team leads on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based

employees worked past the end of their scheduled shift time handling phone calls and securing their workstations.

50. Defendant was also aware that telephone-based employees who worked remotely arrived at their workstations before the start of their scheduled shift time, logged into Defendant's computers, and began working on their computers prior to the start of their scheduled shift time. Likewise, Defendant knew that telephone dedicated employees who worked remotely worked past the end of their scheduled shift time handling phone calls and securing their workstations.

51. Despite seeing and knowing that Plaintiff and similarly situated telephone-dedicated employees performed work at their workstations prior to and after their scheduled shift times, Defendant and its supervisors and team leads did not make any meaningful effort to stop or otherwise disallow this unpaid work and instead allowed and permitted it to happen.

52. Defendant possesses, controls and had access to information and electronic data and event logs that show the times Plaintiff and similarly situated telephone-dedicated employees logged into and out of their computers each day and the time they logged into and out of their telephone systems each day.

53. By possessing, controlling and/or accessing the electronic information and log in/out event logs, Defendant knew that Plaintiff and similarly situated telephone-dedicated employees worked prior to the start and after the end of their scheduled shift time.

54. Despite having this information and knowing that Plaintiff and similarly situated telephone-dedicated employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, and despite requiring and/or allowing them to handle a call up until the end of their scheduled shift time, Defendant did not make any effort to stop or

otherwise disallow the pre- or post-shift work and instead allowed and permitted it to happen.

55. Defendant knowingly required and/or permitted Plaintiff and those similarly situated to him to perform unpaid work before and after the start and end times of their shifts, including booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, as well as completing customer service calls, closing down the software programs, logging off the system, securing their workstations, and securing any customer or proprietary information after the end of their scheduled shift times.

56. The amount of uncompensated time Plaintiff and those similarly situated to him spend or have spent on these required and unpaid work activities averages approximately 15 minutes per day.

C.  *Defendant's Failure to Pay Overtime Wages to Its Hourly Paid Telephone-Dedicated Employees*

57. Defendant determined the rate of pay for Plaintiff and the telephone-dedicated employees.

58. Defendant's managers and supervisors reviewed and approved Plaintiff and other similarly situated persons' time records prior to receiving their paychecks.

59. Defendant supervised and controlled the work schedule of Plaintiff and other similarly situated persons.

60. Plaintiff and those employees similarly situated are individuals who have worked at Defendant's call centers or remotely handling customer calls and who had their pre- and/or post-shift work rounded away from their pay and were not paid for some or all of their work activities prior to the beginning of their shifts or after the end of their shifts.

61. Plaintiff and the other telephone-dedicated employees are also similar because Defendant did not pay them for all time they actually worked.

62. The net effect of Defendant's policies and practices, instituted and approved by company managers and supervisors, is that Defendant willfully failed to pay overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs. Defendant thus enjoyed ill-gained profits at the expense of its hourly employees.

63. Plaintiff and others similarly situated at times regularly work or worked in excess of forty hours per week for Defendant in a given workweek.

64. Defendant's policy and practice of requiring and/or permitting phone-based employees, including Plaintiff and other non-exempt, hourly workers, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206.

65. Defendant's policy and practice of requiring its employees to perform work without pay in many instances has caused Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207.

66. Defendant's failure to compensate the non-exempt, hourly-paid telephone-dedicated employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

67. Defendant's non-exempt, hourly-paid telephone-dedicated employees are entitled to compensation for all time they worked without pay in any given workweek.

**COLLECTIVE ACTION ALLEGATIONS**

68. Plaintiff brings Count I of this Complaint as a collective action on behalf of himself and all other current and former hourly telephone-dedicated employees at Defendant's call centers who Defendant required and/or permitted to perform the work described herein without pay at any time during the three years prior to the commencement

11

of the action to the present.

69. Other phone representatives similarly situated to Plaintiff work or have worked at Defendant's call centers or remotely, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

70. Although Defendant required and/or permitted the FLSA Collective Members to work in excess of forty hours in a workweek, Defendant has denied them full compensation for their hours worked over forty. Defendant has also denied them full compensation at the federally mandated minimum wage rate.

71. FLSA Collective Members perform or have performed the same or similar work as Plaintiff.

72. FLSA Collective Members regularly work or have worked in excess of forty hours during a workweek during the last three years.

73. FLSA Collective Members are not exempt from receiving overtime pay at the federally mandated wage rate under the FLSA.

74. As such, FLSA Collective Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of overtime wages.

75. Defendant's failure to pay the overtime compensation wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Collective Members.

76. The experiences of Plaintiff, with respect to his pay, are typical of the experiences of the FLSA Collective Members.

77. The specific job titles or precise job responsibilities of each FLSA Collective Member do not prevent collective treatment.

78. All FLSA Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

79. Although the exact amount of damages may vary among FLSA Collective Members, the damages for the FLSA Collective Members can be easily calculated by a simple formula.

80. The claims of all FLSA Collective Members arise from a common nucleus of facts.

81. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Collective Members. As such, Plaintiff brings his FLSA overtime as a collective action on behalf of the following collective, and Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons (*i.e.*, the "FLSA Collective Members"):

> All persons who worked for Defendant as a telephone-dedicated employee, or their functional equivalent, however titled, who were compensated, in part or in full, on an hourly basis at any time in three years preceding the filing of this Complaint to the present and who did not receive the full amount of overtime wages earned and owed to them.

82. There are questions of law or fact common to the workers described in paragraph 81.

83. Plaintiff is similarly situated to the workers described in paragraph 81, as Plaintiff's claims are typical of the claims of those persons.

84. Plaintiff's claims or defenses are typical of the claims or defenses of the workers described in paragraph 81.

85. This is not a collusive or friendly action. Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and his counsel will fairly and adequately protect the interests of the persons described in paragraph 81.

86. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

87. At all relevant times, Defendant employed Plaintiff and the persons described in paragraph 81.

88. At all relevant times, Defendant paid Plaintiff and the persons described in paragraph 81 to work.

89. At all relevant times, Defendant has been an "employer" of Plaintiff and the persons described in paragraph 81, as the term "employer" is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

90. At all relevant times, Plaintiff and the persons described in paragraph 81 have been "employees" of Defendant as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

## **COUNT I – FLSA**

### **(Failure to Pay Overtime Wages)**

91. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90 as paragraph 91 of this Count I.

92. Plaintiff, individually and on behalf of the members of the collective described in paragraph 81, asserts claims for unpaid overtime pursuant to the FLSA.

93. At any and all times relevant hereto, Defendant was an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

94. At any and all times relevant hereto, Defendant was an "employer" of the Plaintiff and the members of the collective described in paragraph 81 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

95. At any and all times relevant hereto, Plaintiff and the members of the collective described in paragraph 81 were "employees" of Defendant as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

96. Plaintiff and the members of the collective described in paragraph 81 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory

time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

97.  At all times relevant hereto, Defendant's failure to pay Plaintiff and the members of the collective described in paragraph 81 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

    a.  Defendant knew that the FLSA required it to pay time and one-half for all time worked over 40 hours in a week;

    b.  Defendant failed to maintain true and accurate time records; and

    c.  Defendant encouraged Plaintiff and other similarly situated employees to not record all time worked.

98.  As a direct and proximate result thereof, Plaintiff and the members of the collective described in paragraph 81 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

## DAMAGES SOUGHT

99.  Plaintiff and the FLSA Collective Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated overtime wage rate.

100.  Plaintiff and the FLSA Collective Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

101.  Plaintiff and FLSA Collective Members are entitled to recover their attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, demands judgment against Defendant and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Conditionally certify the collective described in paragraph 81, and grant Plaintiff's counsel leave to send notice of this lawsuit to the members of the collective and

allow them the opportunity to opt-in as party plaintiffs pursuant to Section 16 of the FLSA, 29 U.S.C. § 216;

B. Declare and find that the Defendant committed one or more of the following acts:

   i. Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

   ii. Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

C. Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

D. Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party plaintiffs;

E. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

F. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

G. Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

H. Grant such further relief as the Court deems just and equitable.

DATED this 11th day of April 2024

                                    Respectfully submitted,

                                    Juan Solorzano, individually and on behalf of a collective of persons similarly situated.

                                    /s/ James X. Bormes
                                    One of Plaintiff's Attorneys

| | | |
|---|---|---|
| 1 | James X. Bormes (*pro hac vice pending*) | Thomas M. Ryan (*pro hac vice pending*) |
| 2 | Catherine P. Sons (*pro hac vice pending*) | Law Office of Thomas M. Ryan, P.C. |
|   | Law Office of James X. Bormes, P.C. | 35 E. Wacker Drive |
| 3 | 8 South Michigan Avenue | Suite 650 |
|   | Suite 2600 | Chicago, Illinois 60601 |
| 4 | Chicago, Illinois 60603 | 312-726-3400 |
| 5 | 312-201-0575 | tom@tomryanlaw.com |
|   | jxbormes@bormeslaw.com | |
| 6 | cpsons@bormeslaw.com | |

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

17